IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MELANIE A. LAMPENFELD, :
    Plaintiff :  CIVIL ACTION NO. 3:14-CV-0283
        :
 v.       :
        :  (Judge Brann)
        :
PYRAMID HEALTHCARE, INC., :
a wholly owned subsidiary of :
CLEARVIEW CAPITAL, LLC, :
and BRETT L. SCHARF, M.D., :
    Defendants :

**MEMORANDUM**
March 4, 2015

Defendants Pyramid Healthcare, Inc. (hereinafter "Pyramid"), Clearview

Capital, LLC (hereinafter "Clearview"), and Brett L. Scharf, M.D. have filed a

partial Motion to Dismiss Plaintiff Melanie A. Lampenfeld's Complaint for failure

to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  Plaintiff's Complaint, filed February 17, 2014,

alleges claims for violation of the retaliation provision of the False Claims Act

(hereinafter, the "FCA"), codified at 31 U.S.C. § 3730(h), violation of the

Pennsylvania Whistleblower Law, 43 P.S. § 1423, and public policy wrongful

termination. Pl.'s Compl., Feb. 17, 2014, ECF No. 1 (hereinafter "Pl.'s Compl.").

Defendants seek to dismiss all claims against Defendant Clearview, all

claims against Defendant Scharf, and all claims except the FCA retaliation claim

1

against Defendant Pyramid. For the following reasons, Defendants' partial Motion to Dismiss is granted in its entirety.  Count I is dismissed without prejudice as against Defendant Scharf and Count II is dismissed without prejudice as against all Defendants, both with leave to amend in accordance with this Court's decision. Count III is dismissed with prejudice as against all Defendants.

## I. BACKGROUND

This case arises from Plaintiff's employment, first as a Registered Nurse and most recently as a "Detoxification Program Director/Nurse Manager," for Defendant Pyramid. Pl.'s Compl. ¶ 18, 20.  Pyramid is a for-profit corporation which operates drug and alcohol treatment facilities throughout Pennsylvania. *Id.* ¶ 5.  Plaintiff commenced employment with Pyramid in September 2003 and was promoted three times over the course of her employment, most recently to Detoxification Program Director/Nurse Manager. *Id.* ¶ 18-20.  In this position, Plaintiff's principal accountabilities included ensuring that clients in the detoxification and inpatient units were provided proper medical care.  *Id.* ¶ 24. During her employment, Plaintiff alleges that she made four reports of wrongdoing at Pyramid, for which reports she was ultimately terminated. *Id.* ¶ 78, 80.

The first of these reports of wrongdoing occurred in the fall of 2012 when it was brought to Plaintiff's attention by the Department of Health (hereinafter, the "DOH") inspector that numerous patient charts contained the exact same vital sign

entries and the same documentation of patient examinations conducted by Defendant Brett L. Scharf, M.D. *Id.* ¶ 29-30. Plaintiff further alleges that federal and state government reimbursement programs were being billed for patient assessments and medical examinations that were purportedly, but never actually, performed by Defendant Scharf. *Id.* ¶ 36-37. Plaintiff then reported these inaccuracies to Defendant Pyramid's Director of Nursing, Bernadette Grove. *Id.* ¶ 31.

Next, in August 2013, upon receiving a patient complaint, Ms. Grove requested that Plaintiff investigate an issue arising from a medication and charting error. *Id.* ¶ 58. After completing this assigned investigation, Plaintiff reported to Ms. Grove and her direct supervisor, Richard Knab, that the patient complaint resulted from Defendant Scharf's professional incompetence and that the "nursing staff are fed up with him." *Id.* ¶ 58-60. Though she did not report her findings to Defendant Scharf, Ms. Grove informed Defendant Scharf of Plaintiff's opinions. *Id.* ¶ 63. After hearing Plaintiff's report, Defendant Scharf indicated to Mr. Knab that he felt that the trust relationship between himself and Plaintiff had been "irrecvocably broken." *Id.* ¶ 64-67. Approximately four days later, Plaintiff was placed on suspension, apparently for insubordination directed to a supervisor. *Id.* ¶ 68.

Third, on August 28, 2013, Plaintiff sent a letter to Mr. Knab in which she reiterated her concerns over Defendant's Scharf's improper and negligent medical care and its effect on patient safety, as well as her concerns regarding the fraudulent billing of insurance providers for patient assessments and medical services which were never performed. *Id.* ¶ 72-73.  In addition, she mentioned to Mr. Knab that patients lodged concerns to her that their charts contained specific references to aspects of physical examinations that Defendant Scharf never conducted. *Id.* ¶ 74.

Two days later, Defendant Pyramid terminated Plaintiff's employment, allegedly for insubordination and making false or malicious statements regarding Defendant Scharf, the medical director, and Ms. Grove, the director of nursing. *Id.* ¶ 78-79.  Finally, on September 6, 2013, Plaintiff submitted an appeal of Defendant Pyramid's decision to terminate her to Pyramid's CEO, Jonathan Wolf. *Id.* ¶ 81. She again reported the information relating to Defendant Scharf's conduct and the inaccuracies in billing. *Id.* ¶ 82.  This appeal was denied by Mr. Wolf on September 12, 2013. *Id.* ¶ 86.

As previously discussed, Plaintiff asserts in her Complaint claims for violations of the FCA as against all Defendants, violations of the Pennsylvania Whistleblower Law as against all Defendants, and public policy wrongful termination as against only Pyramid and Clearview.  On April 24, 2014,

4

Defendants filed their partial Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  This matter is now ripe for disposition.

## II. STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff.  *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  However, "the tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).   In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint.  *Kost*, 1 F.3d at 183.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint.  *See Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

---

[1] In their Brief in Support, Defendants argue that Defendant Clearview Capital, LLC must be dismissed as a defendant because Plaintiffs have failed to plead facts sufficient to establish liability.  In response, Plaintiff agrees to withdraw the action without prejudice as against Clearview Capital, LLC pursuant to Federal Rule of Civil Procedure 41. Plaintiff's Brief in Opp. at 2 n.1, May 22, 2014, ECF No. 19 (hereinafter "Pl.'s Opp.").

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-664.

"In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading." *Hellmann v. Kercher*, No. 07-1373, 2008 WL 1969311 at * 3 (W.D. Pa. May 5, 2008) (Lancaster, J.). Federal Rule of Civil Procedure 8 "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests.'" *Twombly*, 550 U.S. at 554 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief. *See Hellmann*, 2008 WL 1969311 at *3. Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Twombly*, 550 U.S. at 561. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law." *Id*. at 326. If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id*. at 327.

## III. DISCUSSION

### A. Individual Liability Under The FCA

Defendants first contend that Plaintiffs' claim in Count I for retaliation under the FCA should be dismissed as to Defendant Scharf because, as a matter of law, there can be no individual liability under §3730(h) of that act. In so arguing, they acknowledge that courts have split on this issue and cite to several recent district court opinions from varying jurisdictions. Plaintiff counters by citing to district court cases which came to the contrary determination.

The FCA imposes liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1).

7

Section 3730(h) of the FCA creates "a private cause of action for an individual retaliated against by his employer for assisting an [FCA] investigation or proceeding." *Graham Cnty. Soil & Water Conservation Dis. V. U.S. ex rel. Wilson*, 545 U.S. 409, 412 (2005). Congress amended this provision in 2009 to read:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). In so doing, Congress expanded protection under the FCA from only employees to employees, contractors, and agents. Moreover, it removed any reference to retaliation "by his or her employer," leaving the potential categories of defendants under this section legally unsettled. 31 U.S.C. § 3730(h) (2003).

Prior to this amendment, courts were consistent in finding that § 3730(h) did not support a claim for individual liability. *See Mruz v. Caring Inc.*, 991 F.Supp. 701, 708-10 (D.N.J. 1998) (determining that, as per the plain meaning of the statute, the term "employer" did not extend liability to individual supervisors); *Palladino ex rel. U.S. v. VNA of Southern New Jersey, Inc.*, 68 F.Supp.2d 455, 464-65 (D.N.J. 1999) ("[T]here is no individual liability for non-employers under § 3730(h) . . . ."); *United States ex rel. Lamar v. Burke*, 894 F.Supp. 1345, 1347-48

(E.D.Mo. 1995) (applying Title VII definition of employer and finding that "employer" does not extend to corporate supervisors or president of defendant corporation).

However, since 2009 courts have split on whether the removal of the word "employer" from the statute was a calculated means by which Congress intended to extend liability for retaliation to individual supervisors or officers.  Although a few early cases came to the conclusion that this was a deliberate maneuver and thereby allowed claims to proceed against individual supervisors, *see Laborde v. Rivera-Dueño*, 719 F.Supp.2d 198, 205 (D.P.R. 2010); *Weihua Huang v. Rector & Visitors of University of* Virginia, 896 F.Supp.2d 524, 548 n.16 (W.D.Va. 2012); *United States ex rel. Moore v. Community Health Services, Inc.*, Civil No. 3:09cv1127, 2012 WL 1069474 at * 9 (D.Conn. Mar. 29, 2012), a consensus has now emerged among the majority of courts to decide this issue that individual liability does not exist under the amended § 3730(h). *See Lipka v. Advantage Health Group, Inc.*, No. 13-CV-2223, 2013 WL 5304013 at *9-12 (D.Kan. Sept. 20, 2013); *United States ex rel. Abou-Hussein v. Science Applications Int'l Corp.*, Civil Action No. 2:09-1858-RMG, 2012 WL 6892716 at * 3 (D.S.C. May 2, 2012); *Aryai v. Forfeiture Support Associates, LLC.*, 25 F.Supp.3d 376, 387 (S.D.N.Y. 2012); *United States ex rel. Black v. American Society for Engineering Educ.*, Civil Action No. 12-1139, 2014 WL 1765337 at *6 (E.D.Pa. May 2, 2014); *United*

*States ex rel. Petras v. Simparel, Inc.*, Civ. Action No. 13-2415 (FLW) (DEA), 2015 WL 337472 at *11 (D.N.J. Jan. 26, 2015).

In coming to that conclusion, courts have relied primarily on the legislative history behind the 2009 amendment.  Specifically, after discussing this legislative history, the court in *Abou-Hussein v. Science Applications Int'l Corp.* found that Congress only intended to extend protection under the statute to a larger group of plaintiffs; it did not mean to extend liability to a larger group of defendants as well. *See Abou-Hussein*, 2012 WL 6892716 at * 3.  Rather, they explained, "Such an interpretation ignores the fact that by necessity the statute could no longer refer only to 'employers' since it would apply to entities which had an independent contractor or agency relationship with persons subject to the Act." *Id*. at *3 n.4.

Similarly, quoting the House Report, the court in *Aryai v. Forfeiture Support Associates, LLC* clarified that:

> Congress intended for the amendment to "broaden protections for whistleblowers by expanding the False Claims Act's anti-retaliation provision to cover any retaliation against those who planned to file an action (but did not), people related to or associated with relators, and contract workers and others who are not technically 'employees.'  The Report contains no similar statement of intent to expand the scope of liability to include individuals.  Where Congress expressly stated its intent to expand the definition of a whistleblower and add specific language to effectuate that intent, it strains common sense to read Congress's silence in the same sentence of the statute as effectuating an unexpressed intent to expand the class of defendants subject to liability under the statute.

*Aryai*, 25 F.Supp.3d at 386 (citing H.R.Rep. No. 111-97, at 14 (2009)). The court

went on to explain:

> This is particularly true in light of the aforementioned presumption that Congress was aware that courts had uniformly rejected individual liability under section 3730(h).  Thus, if Plaintiff is correct, Congress overturned this line of authority by negative implication.  That seems unlikely given that Congress could have simply replaced "employer" with "any person." . . . That Congress chose not to use that phrase . . . in section 3730(h) makes it more likely that Congress deleted the word "employer" not to provide for individual liability to but to avoid confusion in cases involving a "contractor or agent" rather than an "employee."

*Id.* at 386-87.

In contrast, the courts that did determine that claims against individual

supervisors could proceed did so based on little analysis and with no consideration

of the legislative history underlying the 2009 amendment.  *See Laborde*, 719

F.Supp.2d at 205 ("In the absence of specific First Circuit guidance holding that

individual liability does not exist in FCA retaliation claims, and in light of the fact

that the persuasive authority on the issue relies upon an outdated version of the

statute, the Court denies Defendant's motion to dismiss."); *Moore*, at *9 ("The

current Section 3730(h) following the 2009 amendments, however, conspicuously

omits the word 'employer.' Therefore, Ms. Moore's allegations . . . regarding post-

May 2009 . . . do give rise to a retaliation claim."); *Weihua Huang*, 896 F.Supp.2d

at 248 n. 16 ("In the absence of specific guidance from the United States Court of

Appeals for the Fourth Circuit dictating that there can be no individual liability in

11

FCA retaliation claims after the 2009 amendment, and *because Defendants do not assert in their motion that Dr. Huang's FCA claims against them are legally impermissible*, I will not dismiss those claims out of hand.") (emphasis added); *see also FTC v. Jantzen, Inc.*, 386 U.S. 228, 234-35 (1967) (holding that an act must be read as a whole, and a court cannot ignore the "common sense, precedent, and legislative history of the setting that gave it birth.").

Furthermore, this Court cannot accept Plaintiff's argument that because the aforementioned cases discussed only supervisors and managers, independent contractors like Defendant Sharf are still liable under the statute.  As this Court has already explained, the legislative history behind the 2009 amendment serves only to highlight that Congress' purpose was to widen the class of plaintiffs, not the class of defendants.  Consequently, keeping in line with pre-amendment case law, liability under § 3730(h) of the FCA extends only to "employers." *See U.S. ex rel. Friddle v. Taylor, Bean & Witaker Mortgage Corp.*, Civil Action No. 1:06-cv-3023- JEC, 2012 WL 1066510 at *5 (N.D.Ga. Mar. 27, 2012) ("Courts that have interpreted this language have almost unanimously declined to find that 3730(h) creates liability as to individual defendants who are merely supervisors or managers.").  The fact that some cases mentioned only supervisors and managers as the individual defendants not included under this statute does not change this analysis as to independent contractors; the underlying premise that liability extends

only to "employers" remains the same.   In the situation at bar, Plaintiff has made no allegation that she was in an employee-employer relationship with Defendant Sharf; she alleges, rather, that she was employed by Pyramid and that Defendant Scharf was an agent of Pyramid. Pl.'s Compl. ¶ 7-9.

Within this argument, Plaintiff also contends that because Congress widened the potential group of plaintiffs to include independent contractors, it must necessarily have widened the potential group of defendants to include independent contractors.  This argument strains the bounds of logic and rationality.  As discussed previously, despite the fact that Congress amended the statute to explicitly include independent contractors as plaintiffs, there is no evidence either in the text of the statute or the legislative history behind its implementation that Congress intended to similarly expand the class of defendants to independent contractors.

Therefore, although the United States Court of Appeals for the Third Circuit has not yet addressed this issue, this Court is persuaded by the majority reasoning that the legislative intent behind the 2009 amendment had nothing to do with individual liability or liability of independent contractors.  Accordingly, we decide today that 31 U.S.C. 3730(h) does not support a claim for individual liability and Defendants' partial Motion to Dismiss is granted as to Defendant Sharf on Count I

for retaliation under the FCA, with leave to amend to assert that Defendant Scharf

was Plaintiff's employer for purposes of the FCA.

## B. "Public Body" Under Pennsylvania Whistleblower Law

The next question is whether Defendant Pyramid can be considered a

"public body" for purposes of the Pennsylvania Whistleblower Law solely due to

its receipt of Medicaid and TRICARE reimbursements.  In their arguments, the

parties once again point to conflicting case law on this issue.

The Pennsylvania Whistleblower Law states in pertinent part:

> No employer may discharge, threaten or otherwise discriminate or retaliate
> against an employee regarding the employee's compensation, terms,
> conditions, location or privileges of employment because the employee or a
> person acting on behalf of the employee makes a good faith report or is
> about to report, verbally or in writing, to the employer or appropriate
> authority an instance of wrongdoing or waste.

43 P.S. § 1423(a).  An "employer" is defined as a "person supervising one or more

employees, including the employee in question; a superior of that supervisor; or an

agent of a public body." *Id.* at § 1422.  An "employee" is defined as a "person who

performs a service for wages or other remuneration under a contract of hire,

written or oral, express or implied, for a *public body*." *Id.*(emphasis added).

Further, a "public body" includes a "body which is created by Commonwealth or

political subdivision authority or *which is funded in any amount by or through*

*Commonwealth or political subdivision authority* or a member or employee of that

body." *Id.* (emphasis added).  Whether Pyramid can therefore be considered a

public body turns on the meaning of the phrase "funded in any amount by or through Commonwealth or political subdivision authority," and whether that phrase includes funding through Medicaid and TRICARE reimbursements.

The Supreme Court of Pennsylvania has not yet interpreted the phrase "funded […] by or through."  Consequently, this Court must predict how the Supreme Court would decide the issue currently before it.  *See City of Philadelphia v. Lead Industries Ass'n, Inc.*, 994 F.2d 112, 123 (3d Cir. 1993) ("When the state's highest court has not addressed the precise question presented, a federal court must predict how the state's highest court would resolve the issue."); *see also Jewelcor Inc. v. Karfunkel*, 517 F.3d 672, 676 n.4 (3d Cir. 2008).   In predicting state law, a federal court should consider all relevant sources of state law, including "related decisions of the highest state court, decisions of the intermediate appellate courts, decisions of lower courts, scholarly treatises, Restatements of laws and germane law review articles." *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 285 (3d Cir. 1980).  Moreover, "[a]lthough not dispositive, decisions of state intermediate appellate courts should be accorded significant weight in the absence of an indication that the highest state court would rule otherwise." *Lead Indus.*, 994 F.2d at 123.

In support of their argument, Defendants cite to *Cohen v. Salick Health Care, Inc.*, 772 F.Supp. 1521 (E.D.Pa. 1991).  In *Cohen*, the court predicted that

the Pennsylvania Supreme Court would find that the receipt of Medicaid payments

without more is insufficient to make a private entity a "public body" for purposes

of the Pennsylvania Whistleblower Law.  Specifically, the court found that the

legislature intended its definition of "public body" to apply to any entity that

received even one dollar of state funding. *See Cohen*, 772 at 1526 (citing PA.

LEGIS. J. – HOUSE, June 18, 1985, pp. 1230-32, 1277.  However, the court further

noted that the legislature was silent on the precise definition of the word "funded"

as it is used within the statute. *Id.*

    After an evaluation of the nature of Medicaid, the court found that the

"legislature did not intend that the mere receipt of monies from a state source for

services rendered should bring the recipient within the Whistleblower law." *Id.* at

1527.  Most notably, the court determined that allowing such an interpretation

"would extend the reach of the Whistleblower Law to every hospital, nursing

home, institution for the mentally retarded, institution for the mentally ill, home

health care provider, physician, chiropractor, podiatrist, ambulance company,

dentist and optometrist that treats patients whose medical expenses are reimbursed

by Medicaid." *Id.* at 1526.  Instead, the court reasoned, the phrase "funded […] by

or through" was meant to denote only funds which were specifically appropriated

by the legislature to bodies in pursuit of public goals. *Id.* at 1527.

Courts which have followed the holding in *Cohen* have furthered reasoned that:

> [a] contrary ruling could justify the conclusion that other assistance programs, such as food stamps, similarly transform private entities into public bodies.  The legislature could not have intended to create a cause of action under the Whistleblower Law for a former employee of a local grocery store that accepted food stamps.  If we accept Plaintiff's argument as to the definition of "funded," the scope of the Whistleblower Law could be expanded to include any private business that accepted payment from a recipient of government assistance. We are satisfied that this is not what the legislature intended.

*Tanay v. Encore Healthcare, LLC*, 810 F.Supp.2d 734, 744 (E.D.Pa. 2011).

In response, Plaintiff cites to *Denton v. Silver Stream Nursing & Rehabilitation Center*, 739 A.2d 571 (Pa. Super. Ct. 1999).  Decided eight years after *Cohen*, in a matter of first impression, the Superior Court of Pennsylvania expressly rejected the analysis in *Cohen.*  It relied, in part, on a previous decision of the Superior Court in *Riggio v. Burns*, 711 A.2d 497 (Pa. Super. Ct. 1998), which held that:

> [a]n attempt to divine the intent of the legislature by reference to the common understanding of "public body" is not only unnecessary, it also begs the question.  Notwithstanding the everyday meaning of "public body," this term was expressly defined by our legislature for purposes of the Whistleblower Law. . . . The statute plainly and unequivocally makes any body "funded in any amount by or through the Commonwealth . . . authority" a public body for purposes of the Whistleblower Law. 43 P.S. § 1422.  Where the language of a statute is unambiguous on its face, we are bound to give effect to that language.

711 A.2d at 500.  Recognizing that *Riggio* did not have before it the question of whether Medicaid reimbursements constituted funding "by or through the Commonwealth," the court in *Denton* further reasoned that:

> The plain meaning of the language of the statute makes it clear that it was intended to apply to all agencies that receive public monies under the administration of the Commonwealth.  We do not find that legislatively appropriated funds are the only monies that will create "public body" status under the Whistleblower Law.  The statutory language differentiates between appropriated and "pass-through" funds and extends the law to cover both types . . . The Law clearly indicates that it is intended to be applied to bodies that receive not only money appropriated *by* the Commonwealth, but also public money that passes *through* the Commonwealth.

*Denton*, 739 A.2d at 576.

Pennsylvania appellate courts have not addressed this issue since *Denton*, and the federal courts that have contemplated the issue have been inconsistent in their choice of persuasive authority.  Several courts have chosen to follow the reasoning in *Cohen*, *see Tanay v. Encore Healthcare, LLC*, 810 F.Supp.2d 734, 744 (E.D.Pa. 2011); *Bickings v. NHS Human Services*, Civil Action No. 13-2894, 2014 WL 307549 (E.D.Pa. Jan. 27, 2014), while others have followed the analysis and holding of *Denton*, *see Mayer v. Boys & Girls Clubs of Philadelphia, Inc.*, Civil Action No. 10-7574, 2011 WL 4467669 (E.D.Pa. Sept. 23, 2011); *Ellis v. Allegheny Specialty Practice Network*, No. 2:12cv404, 2013 WL 411477 (W.D.Pa. Feb. 1, 2013).

This Court is persuaded by the analysis of *Cohen* and *Tanay* that Medicaid reimbursements do not, without more, constitute "funding […] by or through the Commonwealth" within the meaning of the Pennsylvania Whistleblower Law. Adopting the reasoning of these two cases, this Court opines that Defendant Pyramid cannot be considered a "public body" and therefore is not subject to the Whistleblower Law. Consequently, Count II is dismissed without prejudice, with leave to amend, if Plaintiff can do so, to allege that Pyramid received some other and more specifically appropriated state funding.

## C. Wrongful Discharge

Finally, Defendants argue that Plaintiff's wrongful discharge claim in Count III must be dismissed for three reasons: (1) because the FCA already provides Plaintiff with a remedy for the alleged wrong; (2) because the statutes and regulations cited by Plaintiff do not represent a "clear mandate of public policy"; and (3) because Plaintiff cannot identify an affirmative "statutorily imposed duty" to make the reports that she made. Plaintiff counters first that she does not rely on the FCA as the source of public policy upon which her wrongful termination claim is based and, second, that other statutes place upon Plaintiff a statutory duty to act, namely the Professional Nursing Law, 63 P.S. § 211, *et seq.* (hereinafter the "PNL"), its regulations at 49 Pa. Code § 21.1 *et seq.*, and 28 Pa. Code § 709 which establishes mandatory procedures for the issuance of a license to freestanding drug

and alcohol treatment facilities and inpatient non-hospital residential drug and alcohol treatment facilities (hereinafter "Treatment Center Regulations").

It is well-established that Pennsylvania recognizes an employment-at-will doctrine, whereby an employer may terminate an employee for any reason, with or without cause. *See Shick v. Shirey*, 716 A.2d 1231, 1233 (Pa. 1998). A limited public policy exception to this doctrine exists in the event that the employee's discharge "violate[s] a clearly mandated public policy which strikes at the heart of a citizen's social rights, duties, and responsibilities." *Ridolfi v. Harrisburg Hosp.*, No. 3957 S 1986, 1989 WL 299240, at * 3 (Pa. C.C.P. 1989) (citing *Paul v. Lankenau Hospital*, 543 A.2d 1148, 1155 (Pa.Super. 1988)). As the Pennsylvania Supreme Court has explained the exception,

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal.

*Shick*, 716 A.2d at 1235-36 (quoting *Mamlin v. Genoe*, 17 A.2d 407, 409 (1941)).

Although Pennsylvania courts have not explicitly defined the contours of this public policy exception, its application has been limited primarily to situations in which an employer (1) requires an employee to commit a crime, (2) prevents an employee from complying with a statutorily imposed duty, and (3) discharges an

employee even though specifically prohibited from doing so by statute. *See Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa.Super. 1998).  The Supreme Court of Pennsylvania has indicated that this public policy exception is not to be liberally construed. *See McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (2000) ("An employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth.").

To begin with, because Plaintiff does not rely on the FCA or the Pennsylvania Whistleblower Law as the source of public policy on which her wrongful discharge claim is based, the Court will not discuss this theory for dismissal but rather will evaluate Plaintiff's claims only to the extent that they are based on the PNL or the Treatment Center Regulations.  In that vein, Defendants make two separate arguments: first, that these statutes and regulations do not represent a "clear mandate of public policy" and second, that they evidence no affirmative statutory duty to report on the part of Plaintiff.

Defendants' separation of these two arguments is misleading.  Rather, the three enumerated categories to which the public policy exception has most recently and consistently been applied represent the judicial system's attempt to more precisely define what constitutes a "clear mandate of public policy."  A statutory duty to report is one subset of the circumstances under which the court may find a

21

clear mandate of public policy; the requirement that Plaintiff have had a statutory

duty to report (or one of the other two categories if they apply), is a surrogate way

to demonstrate that a clear mandate of public policy exists.  Though several earlier

cases cited by the Defendants did make their determinations as to the application of

the public policy exception without the guiding principles of these three

enumerated categories, more recent cases have used these categories to delineate

when the exception should be employed.  As such, the arguments that Defendants

have advanced in support of their motion are really one in the same, and the more

appropriate question before the Court today is whether Defendants' conduct fell

within one of those three situations in which the public policy exception has been

applied in recent years.[2]  Because the Defendants' conduct does not fall within the

first or the third categories, and neither party argues that it does, the question then

comes down to whether Defendants prevented Plaintiff from complying with a

statutorily imposed duty.

   In order to determine whether this case falls within the narrow parameters of

the nebulous public policy exception, this Court must examine the existing case

law in which courts have ruled on the application of the exception to the defendant

employer's conduct.  In *Spierling v. First American Home Health Services, Inc.*,

the Superior Court of Pennsylvania held that a nurse's termination based on her

---

[2] Though, theoretically, this Court could find a clear mandate of public policy outside these enumerated guideline categories, this would inappropriately broaden the exception and go against the current inclination of case law, which this Court declines to do.

decision to report suspected evidence of Medicare fraud did not fall within the public policy exception because she was under no statutorily imposed duty to search the company's old and discarded files for evidence of past Medicare fraud and to report that fraud to federal investigators. *See Spierling v. First American Home Health Services, Inc.*, 737 A.2d 1250, 1254 (Pa. Super. 1999). More specifically the court stated, "The Professional Nursing Law, 63 P.S. §§ 211-225.5, cited by Spierling, affords her no relief . . . nor do the Pennsylvania Code sections, related to nursing, cited by Spierling since they do not mandate that she report, under threat of penalty, the sort of past alleged fraud discovered by her when reviewing First American's 'old and discarded' files." *Id.*

In another case decided by the Superior Court of Pennsylvania, *Hennessy v. Santiago*, the plaintiff was an employee at a community living facility for the mentally ill, and she alleged that she had been terminated in retaliation for reporting to the district attorney the rape of a resident. *See Hennessy v. Santiago*, 708 A.2d 1269, 1272 (Pa. Super. 1998). In that case, Hennessy argued that Pennsylvania law, regulations and her profession's code of ethics all required her to report the rape to the authorities. *See id.* at 1273. She argued that these mandates required "a *safe* habilitative environment" for mental healthcare patients and that therefore there existed an affirmative duty upon mental healthcare workers to investigate and report possible crimes involving their patients. *See id.* at 1274.

23

In rejecting her argument, the court held that such an interpretation would be an improperly expansive reading of the law.  Notably, the court determined that:

> [N]one of the laws or regulations cited by the [plaintiff] are similar to 23 Pa.C.S.A. section 6311, "**Persons required to report suspected child abuse.**"  As its title suggests, this section requires certain people, including mental health professionals, to report suspected child abuse.  This section demonstrates that our legislature has chosen to place affirmative reporting duties upon mental healthcare professionals in some situations, but not in others.  Unfortunately for [plaintiff], the facts of her case squarely place her in the latter category.  Since no authority required [her] to act as she did, we find no authority for us to reverse the trial court's decision [dismissing her claim].

*Id.*

Finally, in *Tanay v. Encore Healthcare, LLC.*, the Eastern District of Pennsylvania decided to the contrary, finding that the plaintiff, a nursing home administrator, had set forth sufficient allegations to allow the application of the public policy exception. *See Tanay*, 810 F.Supp.2d at 741.  In that case, the plaintiff wrote a letter to his company's Chief Operating Officer detailing several incidents at the nursing home facility which he viewed as a danger to the safety of the residents, and his supervisors' unresponsiveness to his concerns. *See id.* at 736.  He argued that he was wrongfully terminated against public policy as embodied in the Nursing Home Administrators License Act and the regulations implementing that act.  Under the act, the plaintiff was required to do a variety of things, including enforcing the regulations relative to the level of health care and safety of the residents and to the protection of their personal and property rights, as well as

maintaining an ongoing relationship with the governing body, medical and nursing staff and other professional and supervisory staff. *See id.* at 738. In addition, there were several guidelines which required the administrator to develop policies to govern the care provided by the facility and to evaluate the quality of resident care, among other things. *See id.* 738-39.

Although these regulations did mandate that the plaintiff carry out some sort of unspecified affirmative action in order to care for the residents, they were very similar to those at issue in *Hennessy*, in the sense that there was no specific affirmative duty for the plaintiff to act as he did in sending that letter. However, the court ultimately found that those nonspecific regulatory mandates which "placed on him the responsibility of ensuring the safety of [the facility's] residents and employees," were sufficient to apply the public policy exception. *Id.* at 740.

In the case at bar, Plaintiff argues that the PNL, its regulations, and the Treatment Center Regulations gave her a statutory obligation to report the company's fraudulent billing for services never performed and Defendant Scharf's medical negligence. As to the former report, *Spierling* is directly on point. This Court cannot find anything in any of the statutes or regulations cited by Plaintiff which required her to report instances of fraudulent billing, and Plaintiff points to none. Therefore, Plaintiff cannot base her wrongful discharge claim on her report in this regard.

25

As to the latter report, Plaintiff points to 49 Pa. Code § 21.18(a)(3) which states, "A registered nurse shall . . . [a]ct to safeguard the patient from the incompetent, abusive or illegal practice of any individual."  Moreover, § 21.18(c) states, "A registered nurse who fails to comply with an obligation or prohibition under this section is subject to disciplinary and corrective measures under section 14 of the act (63 P.S. § 224)."  63 P.S. § 224, for its part, deals with the refusal, suspension or revocation of licenses, specifically where the Board finds that "[t]he licensee has willfully or repeatedly violated any of the provisions of this act or of the regulations of the Board." 63 P.S. § 224(a)(3).

Similar to *Hennessy*, this mandate does not affirmatively direct the Plaintiff to report the alleged instances of medical negligence.  Rather, it is deliberately vague as to what action it requires the registered nurse to take in order to protect his or her patients.  Though Plaintiff had a duty as a registered nurse to "safeguard the patient from the incompetent, abusive or illegal practice of any individual," this duty does not, of necessity, imply a duty to report Defendant Scharf's conduct to her superiors.  While undoubtedly slightly more specific than the regulation at issue in *Hennessy*, this regulation is still too indefinite in its directive.  Despite what may be considered Plaintiff's honorable intentions, this mandate cannot create an exception to the narrowly interpreted public policy exception because there was no authority which required Plaintiff to act as she did.

26

In so deciding, this Court recognizes that it is going against the decision in *Tanay* despite having followed its holding as it related to the definition of a public body under the Pennsylvania Whistleblower law. It is true that the facts in *Tanay*, like those in *Hennessy*, are similar to the facts in the matter at hand. However, this Court declines to follow the reasoning in *Tanay* because it appears to be against the current trajectory of case law and the deliberate intention of the Pennsylvania Supreme Court that the public policy exception be narrowly interpreted so as not to interfere too greatly with the employment-at-will doctrine. Moreover, given that *Tanay* and *Hennessy* came to opposite conclusions based on similar factual bases, this Court elects to follow the reasoning in *Hennessy*, a case from the Pennsylvania Superior Court, as indicative of the manner in which the Pennsylvania Supreme Court would rule on the issue. Consequently, this claim is dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' partial Motion to Dismiss is granted in its entirety. Count I is dismissed without prejudice as against Defendant Scharf and Count II is dismissed without prejudice as against all Defendants, both with leave to amend in accordance with this Court's decision. Count III is dismissed with prejudice as against all Defendants.

BY THE COURT:


<u>/s Matthew W. Brann</u>
Matthew W. Brann
United States District Judge